IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| LESLIE MORGAN #677163 | § | |
| v. | § | CIVIL ACTION NO. 9:11cv192 |
| MAJOR CRAIG FISHER, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Leslie Morgan, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit is assigned by consent to the docket of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c). As Defendants, Morgan named Major Craig Fisher, Captain Blake Lamb, Sgt. Obadiah Lopez, grievance investigator Floyd Hicks, and correctional officers Cherise Bevel, Serena Goad, Delra Wagoner, Neil Turner, Natrenio Hicks, and Dennis Taylor.

An evidentiary hearing was conducted on August 23, 2012, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Morgan testified that his complaint encompassed two issues. In the first of these, Morgan stated that on January 13, 2010, he received a disciplinary case from Officer Bevel for refusing to obey an order. Morgan explained that he was sitting in his cell wearing earplugs because it was extremely noisy. An officer came to his cell and asked if his name was Moore, or so he thought, and he said no. Morgan did not know the officer but recognized her face.

The next day, he received a disciplinary case, written by Officer Bevel, for refusing an order to move. He stated that he would never had said no to a move off of D Line, but would have jumped at the chance. Morgan told his counsel substitute what had happened and also wrote a letter to Major

1

Fisher, saying that no one had asked him to move; however, no one came to see him or investigate the case.

Later, Morgan said, he received a notice of the result of the disciplinary hearing, which showed that Captain Lamb had found him guilty. As punishment, he received 45 days of restrictions, reduction to Line Class III, which is the lowest classification level, and the loss of 20 days of good time credits. The disciplinary case also caused him to have to stay another six months in G-4 (medium custody) and in the field force.

A few weeks later, Morgan heard another inmate calling for Officer Bevel. He had wanted to talk to her about the disciplinary case. A small-framed officer walked by, but Morgan did not recognize her as the officer who had come to his cell door on January 13. His neighbor told him that this was Bevel, and he saw the name on her name tag. Morgan says that he later learned that it was Officer Tamika Houston who had come to his cell on that date.

On January 25, the day after he learned that Bevel had not been the officer at his cell door, Morgan filed a grievance, which also complained that the case had not been investigated. This grievance was denied and Morgan filed a Step Two grievance on February 18, 2010. However, this grievance was "withheld" and not officially filed until February 22, 2010, a day late, which resulted in the grievance not being investigated at the regional level.

Morgan reiterates that he thought Officer Houston was asking him his name for mail call. As the facts surfaced, he says, there is "no question" that Bevel was "asked or ordered" to write him a fraudulent disciplinary case. He says that Fisher then graded the case as major and told Lamb to not allow Morgan to attend the hearing, and that all of this was done in retaliation for Morgan's having filed federal lawsuits no. 9:09cv58 and 9:10cv4.

In his second claim, Morgan says that on May 17, 2011, he was sitting in his cubicle in 8 Dorm when Sgt. Lopez told him to step out. When he did so, he was handcuffed, taken to the infirmary, and then moved to D Line. Lopez told him that he was being locked up due to a disciplinary case which had just been written. The cell in which Morgan was placed was filthy and

had nothing but a pile of wet sheets in it; there was no mattress, no blanket, no clean sheets, no toilet paper, and the light did not work. He received some ragged sheets from Officer Wagoner on the third day, but nothing else was done. He remained in that cell for six days.

On May 27, 2011, a "disciplinary classification review board" was held. The committee members included Fisher and Lamb, who voted to demote him back to G-4 medium custody. These officers served on the classification committee even though Fisher was involved with the investigation and grading of the disciplinary case and Lamb was the disciplinary hearing officer, which Morgan stated was a violation of TDCJ rules and regulations.

On June 8, 2011, Morgan filed a grievance. After waiting 40 days for a response, he wrote to the grievance investigator at the Eastham Unit, Floyd Hicks, who told him that no grievance had been filed. Morgan stated that he believed that Officer Goad, who is a grievance officer and Captain Lamb's sister, removed the grievance, although he conceded that he could not prove this and that it was only a "very strong speculation."

A week before he was taken out of his cubicle by Lopez, Morgan that Fisher and Lamb went through his living area, taking such items as paper clips and rubber bands, but they did not find anything for which they could write him a case. Instead, they got Officer Stowe to write the disciplinary case falsely charging Morgan with trying to spit on her. Morgan stated that the officer investigating the case refused to interview inmate witnesses.

Finally, Morgan referred to a third claim, involving Turner, Natrenio Hicks, and Taylor, but testified at the evidentiary hearing that he wanted to dismiss this claim.

## The TDCJ Records

The certified TDCJ records, offered into evidence at the evidentiary hearing, show that on January 13, 2010, Officer Bevel wrote Morgan a disciplinary case for refusing to move to J Line. The preliminary investigation report reflects that Morgan said that he wasn't going to J Line because "they stay locked down too much." The counsel substitute's investigation worksheet shows that Morgan stated that "I need a lawyer to get off this bitch ass unit. She asked if my name was Moore.

3

This is all a bunch of children playing games, it's a shame grown people play games." The counsel substitute wrote that Morgan waived his 24 hour notice and his right to attend the hearing, and he in fact did not attend the hearing.

On May 17, 2011, Morgan received a disciplinary case from Office Stowe, charging him with attempting to expose her to saliva by trying to spit on her. In the "additional information" section of the charging report, Stowe said that Morgan was standing by the stairs when she called count time; he turned toward her, spit at her, and walked back to his bunk. A supervisor was contacted and Morgan's information was verified on the inmate wing locator roster, and a case was written.

The preliminary investigation report says that Morgan stated "that is a lie, I did not spit on or at no one, I do spit on the floor at my feet when I get disgusted." The counsel substitute's investigation recited Morgan's statement as "I did not try to spit on her."

The written record of the hearing shows that Morgan made a statement, to the effect that it was commissary time and he was at the rail of the stairs trying to get to the commissary. Stowe announced count. Morgan said that he has a bad habit of spitting on the floor when he gets disgusted. She walked past him humming, and he spat on the floor. Stowe continued counting and didn't say anything, and the next thing he knew, he was getting locked up.

Stowe said that Morgan spat as she was walking in front of him. She did not know if it was directed at the floor, and acknowledged that none of the spittle struck her. Morgan was convicted of the disciplinary case and given 45 days of cell and commissary restriction, reduction in classification status, and the loss of 180 days of good time credits.

In reviewing the TDCJ records, the Court will assume that Morgan's pleadings and testimony are true for purposes of this Report, and will disregard any factual assertions made at the Spears hearing or contained in the prison records which contradict factual assertions made by Morgan. *See generally* Wilson v. Barrientos, 926 F.2d 480, 482-83 (5th Cir. 1991).

Legal Standards and Analysis

Morgan first complains about the two disciplinary cases which he received, for allegedly refusing a cell move and for allegedly spitting on Officer Stowe. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that where success in a prisoner's Section 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first obtain favorable termination of his available state or federal habeas opportunities to challenge the underlying conviction or sentence. This principle was extended to prison disciplinary proceedings in Balisok v. Edwards, 520 U.S. 641, 648-49 (1997), in which the Supreme Court held that a Section 1983 lawsuit claiming damages and equitable relief from a procedural defect in a prison's administrative process would be barred by the favorable-termination rule where the administrative action could affect credits toward release based on good time earned.

In Coleman v. Hardy, 78 Fed.Appx. 392, 2003 WL 22394712 (5th Cir., October 21, 2003), the plaintiff Stanley Coleman complained of due process violations in a prison disciplinary hearing, including not being allowed to attend the hearing. The Fifth Circuit stated that "because Coleman's claims that he was denied due process during the disciplinary proceedings call into question the validity of the punishment Coleman received, those claims are not cognizable in a 42 U.S.C. §1983 action," citing Balisok and Heck. Similarly, Morgan's complaints concerning the disciplinary hearings in this case all implicate the validity of the punishment he received, and are thus barred by Heck and Balisok.

In Murray v. Battles, civil action no. 1:09cv133, 2012 WL 718515 (E.D.Tex., March 5, 2012, no appeal taken), the plaintiff Greg Murray was charged with a disciplinary offense. He spoke with a counselor named Battles, and during this conversation, Murray agreed to sign a waiver of his appearance before a unit committee, but did not waive his right to a staff representative or to call witnesses in his own defense. He signed the upper part of the applicable form, and Officer Bates told him he had to sign the lower part of the form as well. Bates specifically told him that the waiver only applied to an appearance before the committee.

After the discussion, however, Battles wrote on the form that Murray also waived appearance before the Unit Disciplinary Officer [in other words, waiving attendance at his disciplinary hearing]. Battles also filled out additional forms saying that Murray did not want to call any witnesses and did not wish to have a staff representative assist him. Murray did not attend the disciplinary hearing and was found guilty. His appeals were all denied. In reviewing Murray's federal civil rights lawsuit, the district court stated as follows:

> In this lawsuit, plaintiff asserts he was denied due process of law in connection with the disciplinary proceeding described in his complaint. A finding in plaintiff's favor would imply that plaintiff's disciplinary conviction was invalid. As plaintiff was forced to forfeit good conduct credits as a result of the disciplinary proceeding, a finding in plaintiff's favor would necessarily imply the invalidity of the duration of his confinement. In other words, if plaintiff were to prevail in this lawsuit, such a result would imply plaintiff should be released earlier than would otherwise be the case. Accordingly, plaintiff would be entitled to proceed with this claim only if the Heck requirements regarding a prior finding as to the invalidity of the disciplinary proceeding were satisfied. As plaintiff does not assert that the Heck requirements have been satisfied with respect to the disciplinary conviction, Heck bars him from proceeding with this claim.

The same principle applies in the present case. Were Morgan to prevail, such a result would imply that the disciplinary cases he received from Bevel and Stowe were invalid. Thus, he cannot proceed on these claims absent a showing that these disciplinary cases have been overturned, expunged, or otherwise set aside. Because Morgan has not made such a showing, these claims should be dismissed until he can do so.

Morgan also raises claims which do not implicate the validity of a disciplinary proceeding. The first of these is his complaint that his grievances were not processed properly. The Fifth Circuit has stated that inmates do not have a constitutionally protected liberty interest in the prison grievance procedure, including the processing of grievances. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (stating that claim for relief regarding an alleged violation of due process rights resulting from the prison grievances procedures was frivolous); *accord*, Mahogany v. Miller, 252 Fed.Appx. 593, 2007 WL 3145020 (5th Cir., October 24, 2007) (no protected liberty interest in the processing of prisoner's administrative grievances, as required for a due process claim). Because Morgan lacks a protected liberty interest in the grievance procedure, his claim on this point is without merit.

Next, Morgan complains that Sgt. Lopez placed him in a filthy cell, and Officer Wagoner, the necessities officer, did not give him anything except for two ragged sheets. He said that he remained in the cell for six days.

On September 4, 2012, after the evidentiary hearing in this lawsuit, Morgan filed a motion asking to dismiss Sgt. Lopez. This request should be granted.

To the extent that he sues Wagoner because she did not furnish him with supplies, his claim is likewise without merit. In Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998), the plaintiff Robert Davis was placed in a "crisis management cell" for throwing liquid substances on officers. He was moved out of the first cell, which had no light and electrical wires hanging from the outlet, into a second cell, which was "just filthy, with blood on the walls and excrement on the floors and bread loaf on the floor." He was given cleaning supplies and kept in this cell for three days. The district court held that Davis had failed to set out a constitutional claim because he had not shown that any harm resulted from his exposure to these conditions, and the Fifth Circuit affirmed the dismissal of the case as frivolous.

In McCord v. Maggio, 927 F.2d 844, 846 (5th Cir. 1991), the plaintiff alleged that he was housed in roach-infested, windowless, unlighted cells into which rain water and backed-up sewage leaked. The Fifth Circuit noted that McCord would have to show some injury from these cell conditions in order to prevail on remand. This comports with the holding in Davis, in which the Fifth Circuit emphasized that Davis "never alleged a physical injury."

In the present case, Morgan does not allege that he suffered any harm as a result of his brief stay in the cell. The Supreme Court has noted that "a filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978). In this case, Morgan's stay in the cell was for only a matter of days. This brief duration, combined with the lack of any allegation of injury, renders Morgan's claim on this point without merit. *See also* McClure v. Foster, civil action no. 5:10cv78, 2011 WL 665819 (E.D.Tex., January 7, 2011, *Report adopted by* 2011 WL 941442 (E.D.Tex., February 16, 2011), *aff'd* 465 Fed.Appx.

7

373, 2012 WL 1059408 (5th Cir., March 29, 2012). In McClure, the plaintiff complained that he was placed in "a very cold concrete cell" with no clothes, and that the cell was dirty, with "pubic hair, hair, dirty, and bits of molded food," with "dry pee all over the toilet seat and back as well as the floor," remaining there for three days. The district court, citing Davis and McCord, concluded that McClure's claim lacked merit, and the Fifth Circuit affirmed the dismissal of the lawsuit. Morgan's claim on this point is without merit.

Next, Morgan complains that after the second disciplinary case, he was demoted in classification status by a committee which included Fisher and Lamb. He stated at the evidentiary hearing that the committee members were supposed to be impartial, and that Fisher and Lamb were not impartial because Fisher had investigated and graded the disciplinary case, and Lamb was the disciplinary hearing officer who found him guilty.

In Hentz v. McCarran, 48 F.3d 529, 1995 WL 84057 (5th Cir., February 6, 1995), the plaintiff Roger Hentz, a Mississippi prisoner, asserted that "the penitentiary's practice of allowing members of the disciplinary committee also to serve as members of the classification committee is unconstitutional because this precludes an impartial classification committee." The Fifth Circuit rejected this claim because Hentz had no constitutionally protected liberty interest in his classification.[1] Like Hentz, Morgan lacks a constitutionally protected liberty interest in his classification status. Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992). As a result, the change in his custodial classification brought about by the committee, a reduction to G-4 medium custody status, did not effect an atypical or significant hardship in relation to the ordinary incidents of prison life which would give rise to a protected liberty interest requiring any particular procedures. Charles v. Woody, 180 Fed.Appx. 533, 2006 WL 1342811 (5th Cir., May 17, 2006, *citing* Sandin). Because

---

[1] The Fifth Circuit's decision in this regard relied on Olim v. Wakinekona, 461 U.S. 238, 250 (1983), the reasoning of which has been superseded by Sandin v. Conner, 115 S.Ct. 2293 (1995). However, the holding in Hentz - that the claim lacked merit because the plaintiff did not have a constitutionally protected liberty interest in his classification status - would be the same under Sandin.

Morgan lacks a protected liberty interest in his classification status, he cannot mount a challenge against a classification review procedure on procedural or substantive due process grounds. *See generally* Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir. 1997) (because Texas prisoners lack a liberty interest in parole, they cannot mount a challenge against any state parole review procedure on procedural or substantive grounds). Morgan's claim on this point is without merit.

Finally, Morgan indicates that he was the victim of retaliation, in that Fisher, Bevel, Lamb, and an unknown officer conspired with one another to give him the disciplinary case for refusing to move, in retaliation for his having filed two federal lawsuits, which he denominates as civil action no.'s 9:09cv58 and 9:10cv4.

No defendants were served with process in case no. 9:09cv58. Part of the case was transferred to the U.S. District Court for the Southern District of Texas, after which an evidentiary hearing was held on the portion which remained in the Eastern District of Texas. Shortly after the hearing, Morgan moved to dismiss the case, which motion was granted; he also moved to dismiss that portion of the case which was transferred to the Southern District.

Although Morgan refers to civil action no. 9:10cv4, it is not clear what case he is referring to; this case number is assigned to a habeas corpus petition which does not involve Morgan. The only other case filed by Morgan in the Eastern District of Texas during this time period was Morgan v. Moriarty, et al., civil action no. 9:09cv175, which was filed on October 28, 2009, and dismissed on December 7, 2009, without service of process being issued or a hearing being held. When part of case no. 9:09cv58 was transferred to the Southern District, that case was given no. 3:10cv4; it was filed in the Southern District on January 6, 2010, and dismissed on Morgan's motion on February 26, 2010.

The Fifth Circuit has stated that a prisoner who asserts a retaliation claim must assert specific facts; mere conclusory allegations are not enough. Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988). The elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to

9

retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In addition, the Fifth Circuit has cautioned as follows:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The Court went on to explain that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." Woods, 60 F.3d at 1166; *accord*, Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (noting that "while a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."). As the Eighth Circuit explained, any other rule would allow a prisoner to openly flout prison regulations after filing a grievance and then bring a claim under Section 1983 arguing that prison officials disciplined him in retaliation for filing a grievance. Orebaugh, 910 F.3d at 528.

In this case, Morgan has failed to offer any specific facts showing that he was the victim of retaliation, but simply sets forth the conclusory allegation that it is so. His assertions fall well short of showing either direct evidence of retaliation or a chronology of events from which retaliation may plausibly be inferred; although Morgan asserts that he received the disciplinary case in retaliation

for the lawsuits that he filed, he fails even to show how the officers involved in the present case could have known about the lawsuits at all. No one was served with process and none of the defendants in the present lawsuit were named as defendants in either 9:09cv58 or 9:09cv175. Morgan has offered nothing beyond sheer speculation and supposition in support of his claim of retaliation. As the Fifth Circuit has explained, "the prisoner's personal belief that he is the victim of retaliation" is not sufficient. Johnson, 110 F.3d at 310. Morgan has presented nothing more. His claim on this point is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This statute is applicable regardless of the fact that Morgan paid the filing fee and thus is not proceeding *in forma pauperis*. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998).

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Morgan's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is hereby DISMISSED with prejudice as to the claims implicating the validity of the disciplinary cases which Morgan received until such time as Morgan can show that these disciplinary cases have been overturned, expunged, or otherwise set aside. The Plaintiff's claims which do not implicate the validity of the disciplinary cases which he received are hereby DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. Finally, the Plaintiff's claims concerning Sgt. Lopez are DISMISSED without prejudice. It is further

ORDERED that any and all motions which may be pending in this civil action, specifically including but not limited to the Plaintiff's motion for leave to amend his complaint (docket no. 192) are hereby DENIED. Because leave to add the new claims contained in this proposed amended complaint has been denied, the dismissal of this lawsuit does not encompass these new claims and is effectively without prejudice as to them. Finally, it is

ORDERED that the Clerk shall send a copy of this opinion to the Administrator of the Three Strikes List for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this  5   day of  **October, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE